O. Phil Nordling v. Commissioner. Gill Nordling v. Commissioner.
Nordling v. Commissioner
Dockets Nos. 9310, 9316.
United States Tax Court
1947 Tax Ct. Memo LEXIS 290; 6 T.C.M. (CCH) 189; T.C.M. (RIA) 47046; February 27, 1947
*290 Ralph R. Bailey, Esq., and Carl E. Davidson, Esq., for the petitioners. Wilford H. Payne, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies in income tax against petitioner, Gill Nordling, in docket No. 9316, for the calendar year 1941 in the amount of $62.87, and for the calendar year 1943 in the amount of $12,807.42. In docket No. 9310, the Commissioner determined a deficiency in income tax against O. Phil Nordling for the calendar year 1941 in the amount of $593.10. The two proceedings were consolidated for hearing. The issue in docket No. 9316 is whether the respondent erred in refusing to recognize for tax purposes an alleged partnership between Gill Nordling and his wife, Bernice, and in taxing to Gill Nordling dividends on corporate stock held in the name of his wife. In docket No. 9310, the question is whether the respondent erred in disallowing a capital loss claimed by Phil Nordling on the sale of corporate stock, on the ground that it was a transaction between members of a family and unallowable by reason of the provisions of section 24 (b) (1) (A) of the Internal Revenue Code *291 . Findings of Fact O. Phil Nordling and Gill Nordling, petitioners in docket Nos. 9310 and 9316, respectively, are residents of Oregon, and each filed his income tax returns for the taxable years involved with the collector of internal revenue at Portland, Oregon. They are brothers, who, together with a third brother not involved here, formed a partnership in 1924 to engage in the business of selling automobile parts. The business was incorporated in 1926, and in 1937, another partnership was formed by the same parties to take over from the corporation the operation of the retail stores, of which there were three, located in Oregon and Idaho. The corporation continued to exist and leased the stores and equipment to the partnership, but the only business which it operated was that of a finance company. In 1939, the partnership which had been organized in 1937 was dissolved, and the Idaho store was taken over by the third brother who thereupon withdrew from the joint business relationship, while the two brothers who are petitioners here formed a new partnership under the name "Nordling Parts Company" to operate the two Oregon stores. In addition, Phil and Gill purchased substantially *292 all the stock of the Nordling Finance Co., the corporation to which reference has heretofore been made, and which owned and rented to the partnership the physical equipment and machinery used in the partnership business. This partnership agreement contained a provision that if either party thereto at any time desired the termination of the partnership, he might, upon written notice to the other partner to that effect, offer to buy from or sell to such other partner the affected share in the partnership and the stock held by the selling partner in the finance corporation, all at a price fixed by him. Pursuant to that provision, Phil Nordling wrote a letter, dated August 1, 1941, to Gill Nordling, in which he expressed his dissatisfaction with the existing conditions, and referring to the possibility of invoking the "buy or sell" provision if his grievances were not adjusted. Gill replied, on August 9, 1941, that he could not agree to the suggested changes, and he invited Phil to make such a "buy or sell" offer. On August 19, Phil Nordling, by letter, offered to sell to Gill Nordling, for $18,500, payable as therein and hereinafter set out, for his partnership and corporate interests, *293 or to buy those interests of Gill for the same price. On August 28, 1941, Gill accepted Phil's offer to sell, and sent with his letter of acceptance his check for $50 to show his "good will". All of these letters, comprehending the offer and the acceptance, were turned over to an attorney by Gill, with instructions to prepare a formal sales contract, and the attorney was advised that Gill and his wife, Bernice, were going to take over the business as partners. The attorney therefore included Bernice's name in the contract as a purchaser, but his conferences and negotiations had been with Gill. Phil Nordling was unaware of any arrangement between Gill and Bernice until the final papers were presented to him for execution, but he had no objection or interest in that matter. The suggestion that Bernice should be taken in as a partner originated from a conference with an accountant whom Gill had consulted regarding the purchase of Phil's interests. The accountant, who served as a tax consultant, advised Gill that considerable savings in income tax might be effected by establishing a partnership. Under the agreement negotiated by Gill and Phil, Gill agreed to pay the sales price of *294 $18,500, as follows: $50 having been paid with the letter of acceptance, $2,950 was payable upon execution of the contract, and the balance of $15,500 was to be represented by a promissory note bearing interest at the rate of 4%, upon which payments were to be made at the rate of $150 per month. In addition to the stipulated price of $18,500, there were certain other items payable to Phil, such as an unpaid salary of $300, a note owed by the partnership to Phil in the amount of $760.44, and two notes owed by the corporation, in the amounts of $363.98 and $480.44, and an adjustment on life insurance premiums of $476.09, all of which were to be settled by payment to Phil. In order to pay th down payment of $2,950, and certain other of the items set out above, $4,000 was borrowed from the First National Bank of Eugene, Oregon. A promissory note was executed by Gill and Bernice Nordling as partners of Nordling Parts Co., and by Gill and Bernice Nordling as President and Secretary, respectively, of Nordling Finance Co. The bank was holding as collateral security for obligations of Nordling Finance Co. a promissory note payable to and owned by the corporation. The signatures of the Nordlings *295 as officers of the corporation appeared on the note because of the bank's desire to bring the obligation represented by the note within the collateral agreement under which it held the corporation's note. The note to the bank was paid by Nordling Finance Co., which was later repaid, with interest, out of the profits of the Nordling Parts Co. In addition to the $4,000 note to the bank referred to above, Gill and Bernice Nordling executed and delivered to Phil Nordling a note in the amount of the balance of $15,500 due him under the contract, and the Nordling Finance Co. stock purchased from him in the transaction was assigned in blank and deposited in escrow as collateral for payment of this note. The payments for which the contract provided, and the interest, were paid out of the earnings of Nordling Parts Co. The agreement between Phil and Gill Nordling comprehended that 10 shares of stock in Nordling Finance Co. be purchased from A. B. Nordling, a brother of these petitioners. The purchase price of these shares, which was $2,000, was borrowed from Spencer Collins, the accountant and tax consultant, and a note in that amount was executed and delivered to him by Bernice and Gill *296 Nordling, who also assigned the stock so purchased in blank and deposited it as security for payment of this note. The certificates representing the Nordling Finance Co. stock held by Phil Nordling and A. B. Nordling were surrendered and cancelled, and the stock theretofore held by Gill Nordling was also surrendered and cancelled. New certificates were issued which resulted in 177 shares of common and 11 1/2 shares of preferred stock standing in the name of Gill Nordling and 71 shares of common and 4 1/2 shares of preferred standing in the name of Bernice E. Nordling. Five shares of preferred continued to stand in the name of Martha Nordling. All the preferred stock was later redeemed and cancelled. O. Phil Nordling sustained a long term capital loss of $3,759.45 on the disposition of his stock in Nordling Finance Co. On September 10, 1941, six days prior to the execution of the formal contract, Bernice and Gill Nordling executed the following instrument: THIS PARTNERSHIP AGREEMENT made and entered into between GILL NORDLING and BERNICE E. NORDLING. WITNESSETH: That said parties hereto make this partnership agreement on the following terms and conditions: 1. The partnership *297 shall be for the carrying on of the business of merchandising motor vehicle accessories and the like and such other goods, wares and merchandise as the parties may hereafter elect to deal in. 2. The partnership began under a verbal agreement between the parties hereto on the 2nd day of September, 1941 immediately upon the acquiring of all the interest of O. P. Nording in the partnership which up to that time had been carried on by said Gill Nordling and O. P. Nordling, doing business under the name of Nordling Parts Co. When the interest of the said O. P. Nordling was acquired it was expressly understood that the said Gill Nordling, his successors and assigns, were and are entitled to carry on said business under the name of Nordling Parts Co. and the said verbal agreement between the parties hereto included, among the other stipulations herein set forth, the stipulation that the business should be carried on under the firm name of Nordling Parts Co.; and it is agreed that said partnership shall continue until such time as the same is dissolved by the mutual agreement of the parties hereto or upon thirty days notice in writing by one party to the other. 3. Said partnership shall, *298 as aforesaid, be conducted and carried on under the partnership name, style and firm of Nordling Parts Co. 4. The place of business of said partnership shall be in Eugene, Lane County, Oregon and in Roseburg, Douglas County, Oregon, and at such other place or places as the parties may hereafter determine; but the head office of said business shall be maintained in Eugene, Oregon. 5. The initial capital of said partnership shall consist of $25,265.98, of which $18,925.76 was contributed by Gill Nordling and $6,340.22 by Bernice E. Nordling. 6. Gill Nordling shall have a preferential withdrawal right and shall be entitled in the exercise of such right to draw out from the profits of said business, for his own separate account, Two Hundred Dollars ($200.00) per month as compensation for his services. As a further preferential right Gill Nordling shall be reimbursed for car expense at the rate of.05 cents per mile when his personal car is used in the partnership business. Hotel bills and other traveling expenses shall also be allowed if such expense is mutually agreed upon. The parties hereto understand and agree that each partner shall share equally in all the profits and losses *299 that may arise out of or occur in the prosecution of said partnership operation, with the exception that the aforesaid preferential withdrawals shall not be charged up against the said Gill Nordling's share of said profits but shall be considered as additional compensation for his services and experience. 7. Either party having an excess of capital in said partnership over the other party shall receive during the period of the existence of such excess of capital an amount equal to 6% of said excess during such period. 8. Gill Nordling shall diligently employ himself in the business of said partnership and be faithful to the other partner in all transactions relating to the firm, and give, whenever required, a true account of all business transactions arising out of or connected with the conducting of the partnership, and neither of the partners shall engage in any business except of said partnership and neither shall without the written consent of the other employ either the capital or the credit of the partnership in any other than the partnership business. 9. Gill Nordling shall be General Manager in the operation of said partnership business. 10. Books of account shall be *300 kept by said partners and entries made therein of all moneys, goods, effects, debts, sales, purchases, receipts, payments and all other transactions of said partnership. Said books of account, together with all bonds, notes, bills, letters and other rights belonging to said partnership shall be kept where the business of the said partnership shall be carried on, and shall be at all times open to examination of all the partners. All moneys received from the sale of merchandise or services shall be deposited in The First National Bank of Eugene, Oregon, and shall be withdrawn therefrom only by check drawn and signed by at least one of the parties hereto. 11. Neither of the partners during the continuance of this partnership shall assume any liability for another or others by means of endorsement or of becoming guarantor or surety without first obtaining the consent of the other thereto in writing. 12. At the expiration of each and every month from the commencement of this partnership, or oftener upon request in writing by one partner to the other, an account of the stock, effects, credits, debts and all partnership transactions shall be taken and the true condition of the partnership *301 as far as possible arrived at, and each partner agrees to lend his and his and her aid and services to effect this object. 13. In case of the termination of this partnership from whatever cause, the parties hereto agree that they will make a true, just and final account of all things relating to said business and in all things duly adjust the same; and after all the affairs of the partnership are adjusted and its debts paid off and discharged, then all the stock, as well as the gains and increase thereof, which shall appear to be remaining either in moneys, goods, fixtures, debts or otherwise, shall be divided equally between the parties hereto unless such partnership is terminated by one partner selling to the other, in which event this paragraph with reference to the termination of said partnership and the division of assets shall be deemed to be inapplicable. 14. Either partner may terminate this partnership by giving to the other partner thirty (30) days notice in writing of the intention to terminate this partnership, and said notice shall contain a statement of a give or take price, and if such notice is given by one partner to the other partner the other partner shall have *302 the right, if he or she desires, to purchase at said give or take price, the interest of the partner giving the notice; or if such other partner to whom notice is given desires to sell his or her interest at said give or take price to the partner giving notice, the partner to whom notice is given shall have the right to do so; but it is expressly understood that the purpose of this agreement is to compel the partner to whom notice is given either to purchase the interest of the partner giving notice at said give or take price or to sell at said price his or her interest to the partner giving the notice, and the right of the partner to whom notice is given either to purchase or to sell shall be exercised not later than thirty (30) days from the date of the giving such notice. * * *
Bernice Nordling owned no separate property at the time of the transaction involved here. This fact was known to the officers of the bank, who did not at any time ask her for a financial statement. The petitioner Gill Nordling did not need nor expect any financial assistance from his wife, but felt her advice and support would be of value to him. He had always consulted her for advice in business matters, *303 and continued to do so after the formation of the partnership. She worked for the partnership about one week in 1941, about two weeks in each of 1942 and 1943. Gill and Bernice Nordling had four children, between the ages of 8 and 14 years, at the time the alleged partnership agreement was executed. The business of Nordling Parts Co. is principally the sale of automobile parts. These are purchased from manufacturers of such parts, and it has, through the years, successfully negotiated favorable contracts for the purchase and handling of such parts. Since the formation of the alleged partnership involved here, Gill Nordling has negotiated and signed all such contracts on behalf of the business, and has acted in all respects as general manager of the business, making all decisions of importance and establishing the policies governing the business. After the execution of the alleged partnership agreement, books of account were kept on a partnership basis, assumed name business certificates were filed with the proper public authorities, notice was given the Social Security and Internal Revenue Departments of government, as well as to the State Unemployment Compensation Commission, *304 Dun and Bradstreet, etc. New Leases were obtained to the property used, and customers were, in some cases, orally notified. In 1943, petitioner Gill Nordling transferred to Bernice, his wife, an interest of $4,872.49 in the business on the books thereof, and he filed a gift tax return reporting the gift. The reason for this was to equalize their shares as shown on the books. The partnership agreement provided for payment to Gill Nordling of a salary of $200 for his personal services to the business. A salary of $450 was paid to one of the employees working under his supervision. Withdrawals were made by Mrs. Nordling in the amount of $150 a month until the end of 1943, after which she withdrew $300 a month. After June or July of 1942, she maintained a separate bank account, in which she deposited these amounts. There is no direct evidence concerning the purposes for which she spent the money withdrawn, but Gill Nordling testified that they withdrew, in the later period, $600 a month for living expenses. This is approximately the total amount of the regular withdrawals of both. Bernice Nordling contributed to the business no services of a vital or controlling nature, and no capital *305 originating with her. She was only a nominal party to the transaction described, in which her husband and his brother were the real parties in interest, and it was not the intention of any of the parties that she acquire the real ownership of either the partnership interest or the corporate stock for the purchase of which her husband alone had negotiated. No partnership existed which can be recognized for Federal income tax purposes. The real purchaser of O. Phil Nordling's stock in the Nordling Finance Co. was his brother, Gill Nordling. Opinion KERN, Judge: The principal issues here grow out of an alleged purchase of an interest in a family partnership and stock in a closely held family corporation by the wife of Gill Nordling, one of the petitioners, from his brother Phil Nordling, the other petitioner. The resolution of all three issues presented by these proceedings will depend upon the efficacy of this last minute substitution of Mrs. Nordling for Mr. Nordling as the purchaser of these interests. Since both the partnership interest and the corporate stock were acquired in the same transaction, under the same instrument the determination of the bona fides, or lack thereof, *306 of that transaction will necessarily be dispositive of the issues relating to both properties. The background of the transaction has been described in detail in the findings of fact. The particular facts which seem to us to be persuasive are the fact that the purchase of such interests was negotiated almost to completion by the husband in his own name and on his own behalf, pursuant to the terms of a partnership agreement to which he was a party. The offer was made to him individually, and he accepted it individually, paying at the same time a small payment on the amount agreed upon as the purchase price. The wife's name was inserted in the final contract by its draftsman at the direction of the husband and at the suggestion of her husband's tax consultant. She had no separate property. She joined in the execution of notes representing money borrowed from the bank to carry out the contract so registered between the husband and his brother, but her credit was in no way relied on. She performed, admittedly, only negligible services to the business, and none beyond those which she had always performed. The duties of the partner who was selling his interest and withdrawing were assumed *307 by the husband, or delegated by him to employees, and the husband thereafter operated, managed and controlled the business in its entirety. In all proceedings relating to the taxation of partnership earnings within a family group, we must look to see whether there was a bona fide intention to conduct the business as partners, and where, as here, it is admitted the services of the wife were inconsequential, and her claim to a partnership status rests upon her claimed acquisition of the ownership of capital employed in the business, it is pertinent to inquire further whether she did, in reality, become the owner of such capital. Commissioner v. Tower, 66 Sup. Ct. 532; Lusthaus v. Commissioner, 66 Sup. Ct. 539. We are persuaded by a consideration of all the facts before us that Mrs. Nordling did not, by reason of the transaction described above, become the owner of either the partnership interest claimed for her, or of the corporate stock, in such a real sense as to be recognized as owner under the Federal revenue laws. She entered into no negotiations for its purchase, she had no separate capital and secured none on her own account. Her husband, who had *308 already bound himself to buy the property for himself, secured the capital by means of which the terms of his contract were carried out, and after the transaction was completed, he assumed the responsibilities and managed and controlled the whole business, as it had been contemplated he would do when he originally entered into the contract to purchase his brother's interest. Her participation in the transaction was artificial in the extreme rather than real. The petitioner, by way of distinguishing this situation from the facts usually encountered in cases involving family partnerships, relies most heavily on the fact that Mrs. Nordling allegedly purchased her interest of the partnership and corporation from a third party, in this case, the brother of her husband. The question does differ somewhat from those cases in which there has been a purported transfer from a husband to his wife of business interests formerly owned by him, and which he continues to manage and control in the operation of the business. We have here, rather, a purported transfer to a wife by her husband's brother of an interest in property for the purchase of which her husband had negotiated in his own name and *309 behalf, the purchase price of which was borrowed on the husband's credit and the management and control of which was assumed and hereafter continued by the husband alone. The question in the one case is whether the husband, in fact, relinquished ownership of property theretofore held by him, and in the other, whether the husband did not, in fact, acquire property for which he had contracted. In both cases, it is the reality, and not the appearance, to which effect must be given in tax matters. In the case of Kenneth Alexander, 6 T.C. 804, the wife of the taxpayer had purchased a partnership interest from her husband's uncle. She paid for it partly from funds of her own, but largely by means of money borrowed on her husband's credit or from his parents, and repaid from partnership earnings. She performed no services. While some of the basic facts in the Alexander case, so stated, are similar to those before us, it must be remembered that the ultimate fact to be decided in each case is whether there was a bona fide partnership between the husband and wife. We felt in the Alexander case, that the wife was the real purchaser of the partnership interest, and became a *310 real partner. It was she who was originally intended to be the purchaser, and who was named in the bill of sales as the purchaser, and, to some extent, at least, she paid for it from her own funds. The history of that business reflected the tradition of family ownership and operation dating from 1914, when the taxpayer's father and mother formed a partnership for the operation of the same business. The taxpayer acquired the interests of his father and mother in later years, and upon the retirement of the uncle from the business, it was decided that the wife should purchase his interest. We were there persuaded of the reality of the transaction, or, at least, that the respondent who had the burden of proof in that regard, had not shown otherwise. Here, the petitioner has the burden of proof. The facts which we have related above do not constitute an atmosphere of reality, and we believe the wife of the petitioner to have been only a nominal participant in the purchase. As to that share of the capital later transferred on the books by Gill Nordling to his wife, and reported as a gift, we are free, under the rule of the Tower and Lusthaus cases, supra, to consider the fact that this *311 does not constitute capital originating with the wife. The petitioner points out that this was a business in which capital, as well as personal service, is important. We think the evidence indicates the personal services to have been the more important element, but the fact is largely unimportant, in view of our finding that no separate capital, in fact, was acquired or contributed by Mrs. Nordling. We conclude, therefore, that Mrs. Nordling acquired no real interest in the property covered by the contract of purchase, and that the respondent's determination that no valid partnership existed for tax purposes is not shown to have been in error. This decision disposes also of the issue relating to the taxability of the dividends on the Nordling Finance Co. stock, and points the way to the disposition of the issue in which the petitioner, Phil Nordling, is interested. He suffered a loss of $3,769.45 upon the disposition of his stock in Nordling Finance Co. He has conceded that that part of his loss which arose from the sale of stock to his brother must be disallowed, under the provisions of section 24 (b) (1) (A) of the Internal Revenue Code. He insists, *312 however, that one-half of his stock was sold to his sister-in-law, and that the loss arising therefrom must be allowed. [1]
In view of our conclusion above that Mrs. Nordling's participation in the purchase of Phil Nordling's interests was only nominal, the intentions of the parties throughout the negotiations having been the purchase thereof by Gill Nordling, we adhere to that conclusion with respect to this one-half of the corporate stock, and hold the real purchaser to have been Gill Nordling. No loss deduction is therefore allowable on this account. Decision will be entered for the respondent. Footnotes
1. SEC. 24. ITEMS NOT DEDUCTIBLE. * * *
(b) Losses from Sales or Exchanges of Property. - (1) Losses Disallowed. - In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly - (A) Between members of a family, as defined in paragraph (2)(D); * * *
(2)(D) The family of an individual shall include only his brothers and sisters (whether by the whole or half blood), spouse, ancestors, and lineal descendants; and * * *↩